SAMUEL R. BARTON *vs.* PARKER C. KIRK & others.

Worcester.    October 4, 5, 1892. — October 21, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Due Care — Negligence — Burden of Proof.*

In an action to recover for the pain and suffering of the plaintiff's intestate, and for money expended for the services of physicians by reason of injuries received by him while in the defendant's employ, the only person who was in the room at the time of the accident testified that she saw the intestate going up the ladder with an oil can in his hand, that she heard the can drop, and looked up and saw him falling between the girt and the shafting. *Held,* that the evidence did not disclose anything from which the cause of the accident could be reasonably inferred, and that the burden on the plaintiff to show that his intestate was in the exercise of due care was not sustained.

TORT, by the administrator of the estate of Samuel A. Norton, to recover for the pain and suffering of the intestate, and for money expended for the services of physicians by reason of injuries received by him while in the defendants' employ. Trial in the Superior Court, before *Aldrich,* J., who directed a verdict for the defendants, and reported the case for the determination of this court, in substance as follows.

The defendants were manufacturers of woollen goods at their mills in Auburn, Mass.

Samuel A. Norton was a boy about sixteen years of age at the time of the accident. He had been in the employ of the defendants eleven months, and for five months had been engaged on the same job he was working on at the time of the accident. His duties at the time of the accident, on September 6, 1890, were to carry filling, and to oil shafting while in motion, in a small building near the main mill, known as the twisting or picker room. This was a one-story brick building, containing a single room about twenty by thirty feet, running north and south. The roof was slightly pitched, being about fifteen inches higher at the middle than at the eaves. There were three cross-beams resting on the walls of the building, and extending across the width of the room at the eaves. Lengthwise of the room, at the same height as the cross-beams and resting on

them, was a beam called the tie girt, this being directly under the ridge-pole and about fifteen inches below it. There was a wooden floor, which was somewhat greasy, as much so as woollen-mill floors usually are. The only machine in operation in this room on the day of the accident was a twisting machine, used for winding silk and woollen threads on to bobbins, which extended along the eastern half of the building, leaving room enough at either end and on the side next the wall of the building for the operator to go around it easily, and extending to within about two feet and a half of the centre lengthwise line of the room. There was also standing on the floor of this room a machine called a spooler, which was not in use. It was four and a half feet long, two and a half feet wide, and four feet in height. The northerly end of it was nearly under the first junction of cross-beam and tie girt from the northerly end of the building, and it extended about two feet west and five inches east from the centre line of the building under the tie girt. There were several boxes standing near the twister, distant about two feet from it, into which were put the bobbins. Power was brought into the room from the main mill by means of a wheel at about the level of the floor at the north end of the building, from which a belt ran to a shaft which rested on the northerly wall of the building, and on the three cross-beams, at a distance of two feet six inches east of the tie girt. From this shaft power was belted to the twister. It was the duty of Samuel A. Norton, the plaintiff's intestate, when the machinery was in motion, to oil the bearings of this shaft upon the cross-beams.

The room was fifteen feet two inches from floor to ridge-pole. Two ladders for general use were in the room, one thirteen feet, and the other fifteen feet nine inches in length. Both were originally one ladder, twenty-eight feet nine inches in length, which had been cut in two, and had been in use about seven years. The longer ladder was the one used by Norton at the time of the accident. It had no hooks, spikes, or stays of any kind. On the morning of the accident it had been used by the chief mechanic of the mills in fixing some gearing upon the shafting, and was left by him just before the machinery started up standing against the westerly side of the tie girt, and the

southerly side of the first cross-beam from the north end of the building, where it was when Norton came in to oil the shafting just before the accident. Two of the defendants were occupied constantly at the mill, and were familiar with the ladders and the twisting-room.

The only person present in the room at the time of the accident was Agnes McCann, who was called by the plaintiff, and testified as follows :

" I tended the twister. Nobody else was employed all the time in this room. The Norton boy brought in yarn, and oiled the shafting ; he oiled it almost every day. On the day of the accident he came in at the door at the southerly end of the building about nine o'clock. He took the short ladder and went to oiling the first bearing he came to. Then he went to the second bearing with this same ladder. Then he left the shorter ladder when he went to the third bearing. The other ladder was standing on the west side of the tie girt against it and the cross-beam. Somebody left it there that morning. I saw him start up the ladder with his oil can. I was on the front of the twister then. I went around the end to the east side of it. I heard the oil can drop, and I looked up, and I saw the boy turning over in the air, coming down between the tie girt and shafting. The boy and the ladder came down together. His feet struck on the twister, and one of his shoes caught on it. His head was on the floor between the twister and spooler. He did n't seem to know anything. The shafting belt was in motion all this time. I stopped my machine some time, but cannot tell whether before or after he went up the ladder."

There was evidence tending to show that there were marks on the floor, variously estimated at from one to seven feet in length, where the ladder had slipped. The plaintiff's intestate, who had always been healthy and was very intelligent, died on the evening of September 8, 1890.

*F. P. Goulding*, for the defendants.

*J. R. Thayer*, (*A. P. Rugg* with him,) for the plaintiff.

MORTON, J. The evidence does not disclose anything from which the cause of the accident to the plaintiff's intestate can be reasonably inferred. The only person in the room at the time of the accident testified that she saw him going up the ladder

with the oil can in his hand; that she heard the can drop, and looked up and saw him falling between the tie girt and the shafting.  Whether his fall was due to the slipping of the ladder or to some act of carelessness on his part is left entirely to conjecture.  As the burden of proof was on the plaintiff to show that his intestate was in the exercise of due care, it is clear that upon this state of the evidence the burden is not sustained.  *Shea* v. *Boston & Maine Railroad,* 154 Mass. 31. *Tyndale* v. *Old Colony Railroad,* 156 Mass. 503.

In this view of the case, the evidence that was offered by the plaintiff and excluded becomes immaterial.

In *Weblin* v. *Ballard,* 17 Q. B. D. 122, it is evident that the judge of the county court must have found from his inspection of the premises and the other evidence before him that the accident occurred through the slipping of the ladder.

*Judgment on the verdict.*